Nicholson, Ch. J.,
delivered the opinion of the court:
Prank G-. Pratt insured his life for $10,000 in the Globe Mutual Life Insurance Company, in Hew York, upon the “ten-year plan.” The annual premium to be paid was $491. The insurance was for the use and benefit of his wife, Kate G-. Pratt, and their two children. After making five annual payments of premiums, the original policy for $10,000 was surrendered, and a paid-up policy for $5,000 was issued and delivered. After the issuance of the paid-up policy, negotiations were inaugurated between Prank G. Pratt, the husband, and E. Chase, one of his creditors, at St. Louis, and the insurance company, for the surrender and transfer of the policy to the company upon its payment of about $1,145, the estimated cash value thereof. The obstacle in the way of the consummation of this arrangement was that the entire beneficial interest m the policy, according to the terms, as stated therein, was in Mrs. Pratt and her two children, who were minors. The company instructed Chase and the husband that, so far as the children were concerned, it was necessary that they should have a guardian to make the surrender and transfer of their interest, and to receive their portion of the money; and, as to Mrs. Pratt, that her consent should be procured by her own signature, properly authenticated. It was well known to Chase, the creditor, and to the insurance companv. that the health of the assured husband was precarious, and that the chances -were that he would soon *176 die. Tliis fact seems to have stimulated the parties to active exertions in overcoming the obstacles to the surrender and transfer of the policy. The assured was willing to carry out the arrangement, and promptly procured himself to be appointed guardian of his two- minor children by the county court of Shelby. The only difficulty, then, was to procure Mrs. Pratt to sign and acknowledge the necessary receipt on which the money could be drawn. The record discloses the fact that Mrs. Pratt was utterly opposed to the surrender and transfer of the policy, and that for a considerable time she stood out and resisted the most persistent importunities of her husband. It appears that Chase, the creditor, kept up a constant correspondence with the husband, in which he was accused of base dishonesty in failing to procure his wife’s consent to the arrangement, and in which his wife was grossly insulted for her stubborn persistence in withholding her consent. The letters so written to the husband were shown to the wife as evidence that his honor was involved in the matter, and that her continued refusal would involve him in disgrace. It is not improbable that the letters were written with the view of furnishing to the husband the most effective arguments to be addressed to a wife. At all events, these appliances, together with arguments used by the husband, amounting to- such menaces as could not well be resisted by a wife, finally succeeded, and she joined her husband in signing a receipt for $1,145, as the cash value of the policy. But even then she refused to so acknowledge her signature that it could be authenticated. Of course, the arrangement remained executory until the receipt was sent to the office in New Yoik, and by the company approved and accepted as satisfactory. When presented, the company determined that it was sufficient, signed, as it was, by Prank G\ Pratt, as guardian of his two children, and by his wife for herself. The paid-up policy for $5,000 was therefore surrendered to the com *177 pany by tbe creditor, in whose possession it bad been, bnt without any assignment- by Mrs. Pratt, and the money was paid over to the husband, and by him used in his individual transactions, most of it being paid to Chase on his debt. Prank G-. -Platt lingered for a few months after the surrender and transfer of the policy, and died. Complainants filed their bill upon the facts stated, claiming that the surrender and transfer of the policy were illegal, fraudulent, and not binding on them, and claiming that the insurance company is indebted to them for the full amount of the policy and interest.
By the terms of the paid-up policy, the insurance company, for the consideration of five annual payments of premiums, acknowledges itself bound to pay to Mrs. Pratt and her two children, $5,000, within sixty days after the death of their husband and father, Prank G\ Platt, the assured. This was a fixed and vested interest, subject to- no contingency for failure to pay annual premiums. It is true that Prank G. Pratt had made the five payments, amounting to nearly $2,500, which constituted the consideration of the absolute promise to pay his wife and children $5,000 upon his death. It was an executed contract; and, although voluntary, being executed, it was beyond the power of the husband to defeat it by assignment or appropriation to his creditors. It was strongly intimated by this court in the ease of Rison v. Wilkerson, 3 Sneed, 568, that, in case of a policy which provides on its face that the insurance is for the benefit of a wife and children, the husband could not by any act of his divert it from their use and benefit, although it was held that, under our act as to life insurance being for the benefit of the wife and children, the husband’s power over it is not affected by the act, but continues as ample and unrestricted as before. But this was held in a case in which there was no provision in the policy for the benefit of wife and children, as in the present case; and it was a case, too, in which the interest *178 of the wife and children had not become vested and absolute by the issuance óf a paid-up policy, as in the present-case. '
In New York, where they have a statute as to life insurance inuring to the benefit of widows and children very similar to our statute, it is held that by force of their statute the husband cannot assign the policy so as to defeat his widow and children. In the case of Eadie v. Slimmon, 26 N. Y., 9, Judge Smith says: “A majority of my brethren also think that the policy of insurance was not assignable by Mrs. Eadie. We think the intent of the statute was to malee t-hese'policies a security to the family of any married man, and a provision for their use and benefit, ^and that this intent could be defeated if they were held to be assignable by the wife like ordinary choses in action belonging to her in her own right as her separate property.” Upon a reargnment of the case, Chief Justice Denio said: ‘ “We see no reason to change the opinion which we arrived at at the last term as to the assignable quality of the interest;” concluding as follows: “The provision is special and peculiar, and looks to a provision for a state of'widowhood, and for orphan children; and it would be a violation of, Hie spirit of the provision to hold that a wife, insured under this act, could sell or traffic with her policy as though it were realized personal property or any ordinary security for money.” The case referred to in 3 ‘Sneed involved the right of the husband to assign the ordinary life .policy, as the same is affected by our statute. But in this case the husband did not attempt td make the assignment for himself. lie attempted to assign the interest of his children as their guardian. That he could not do this is too- clear for argument.
The only question, then, is as to the assignment of her interest by Mrs. Pratt. On this question the case of Eadie v. Slimmons, 26 N. Y., just referred to, is conclusive, as the contract of assignment was consummated in *179 New York, and hence the law of New York must govern. Without expressing any opinion as to the question whether Mrs. Pratt did not sign the assignment under legal duress —as to which-tire proof is strong — we are satisfied that there was a combination of influences and appliances brought to bear upon her by the creditor .and her husband, with the knowledge and acquiescence of the insurance company, which would justify us in declaring the assignment void for fraud, if we were not satisfied that the assignment is void under the law of New York, without regard to the question of duress or fraud.
Chancellor Walker was of opinion that complainants were entitled to recover the full amount of the policy and interest, and so decreed, and we affirm his decree, with costs.